### DUNCAN v. STATE BOARD OF EDUCATION.

1. PUBLIC SCHOOLS.—THE STATE BOARD OF EDUCATION may provide by contract with publishers of school text-books to maintain at the State capital a central wholesale depository from which its agencies and the county depositories may be supplied at a discount of not less than ten per cent.

2. EQUITY—INJUNCTION.—IF STATE BOARD OF EDUCATION have acted without warrant of law in providing a central depository for text-books, the injury would be common to the tax-payers of the State, and remedy would be suit by State and not proceeding for injunction by individual tax-payer.

3. IBID.—IBID.—STATE BOARD OF EDUCATION.—COURT OF EQUITY will not restrain acts of State Board of Education at instance of individual tax-payer, where his interest is small and where its plans have been undertaken and carried almost to completion, except upon the clearest showing that the Board has transcended its statutory powers.

Application for injunction by W. H. Duncan and W. R. Owens against D. C. Heyward, Governor, and *ex officio* Chairman; O. B. Martin, Superintendent of Education; W. K. Tate, J. E. Boland, D. W. Daniels, A. C. Rembert, A. R. Banks, H. M. Ayer and A. J. Thackston, constituting the State Board of Education, before Mr. Justice Woods, at Chambers.

*Messrs. Bellinger & Welch,* for the motion.

*Attorney General L. F. Youmans, Assistant Attorney General D. C. Ray* and *Mr. J. S. Muller,* contra.

July 19, 1906.   Opinion by

MR. JUSTICE WOODS.   This is an application by the plaintiffs, as resident taxpayers and patrons of the public schools, for a temporary injunction to restrain the defendants, constituting the State Board of Education, from entering into contracts with certain publishers to furnish school books for the free public schools of the State.   The contract which all publishers submitting bids were notified they would be required to sign, contained the following clauses, which it is alleged were in violation of statute law, in that they provided for an additional charge of ten per cent. to be allowed to a State depository, which the State Board of Education had no authority to establish themselves or require the publishers to maintain: "The party of the second part further agrees to and with the party of the first part, that it will furnish the books named in this contract to its own agencies, to the county depositories and to individuals in the State, through a central depository, to be located in the city of Columbia, in the county of Richland, said depository and its manager to be approved by the State Board of Education; and it is further agreed, that if any books are furnished to the above named agencies, depositories and individuals, in any other manner, said books shall be furnished at the same price and upon the same terms as those furnished through the State depository.   The party of the second part further agrees that the manager of the central depository shall be the agent of the publisher, and shall accept any and all service in the name and stead of the party of the second part. The party of the second part further agrees to and with the party of the first part, that it will sell, furnish and deliver to the agencies, at a discount of not less than ten per cent., and that the books shall always be furnished to the county depositories at as low a price as they are furnished to any agency or dealer in the State; and it is further agreed, that when books shall be ordered by individuals, they shall be delivered to them at the prices printed on the back, free of

36—74

transportation to such individuals." The argument is that
the publishers in making their bids estimated this additional
ten per cent. as a part of the price of the books which the
plaintiffs allege constituted an unwarranted and unreason-
able burden on the patrons of the public schools.

If the Board of Education could suggest no good to the
cause of public education and no benefit to the individual
patrons of the schools to be expected from requiring the
publishers to maintain a central depository, then their action
might well be regarded capricious and arbitrary, pos-
sibly warranting the interference of the Court. But
it cannot be doubted that a central depository at the
capital of the State, where all the books prescribed are always
on hand, will enable the local county depositories and indi-
vidual purchasers to procure books with much more dispatch
and facility than they could if it were necessary, as it has
heretofore been, to make separate orders to several publish-
ers in cities far distant from the purchaser and from each
other. In addition to this, it is perfectly manifest that the
publishers, in submitting their bids based on the requirement
that they should maintain the central depository at a cost of
ten per cent. on the sales, must have estimated some com-
pensatory reductions of expense—such, for example, as the
difference in freight from distant points on small packages
of books and books shipped in large lots, the difference in
the cost of clerical force necessary to get together and ship
a very large number of small orders and a small number
of large orders. In other words, the ten per cent. would
represent to a large extent the difference between the cost of
handling the goods by wholesale and retail, the central de-
pository undertaking for the publishers the trouble and ex-
pense of retailing the books as a general warehouse. These
grounds existing for the Board of Education to consider the
establishment of the central depository wise and no charge
being made of a lack of good faith or zeal for the public
welfare, it is not for the Court to make nice calculations and

issue an injunction on the ground that its judgment of the matter is superior to that of a board designated by the law as especially qualified to deal with such questions.

The plaintiffs insist, however, that the County Superintendent of Education is required to furnish books at the lowest publishers' prices under the following provision of the law: "The County Boards of Education of the several counties of the State are hereby authorized and required to set aside from the public school funds of their respective counties an amount not exceeding five hundred dollars, for the purpose of providing the pupils attending the free public schools of their counties with school text-books at actual cost or exchange prices.

"The amount so set aside from the school funds shall be paid to the County Superintendent of Education by the County Treasurer, out of the unappropriated general school funds in his hands, on the warrant of said County Board of Education, and shall be and remain a permanent fund in the hands of the County Superintendent of Education, to be used in purchasing and keeping on hand school text-books for sale to pupils attending the free public schools of his county, for cash, at actual cost or exchange prices, and to be used for no other purpose, and in no other manner; and the place where said school text-books are kept and sold shall be deemed depositories, under the control of the State, as provided in the *seventh article or provision in the contract made in 1893 with the publishers of school text-books.* That the County Superintendent of Education in every county in the State be, and he is hereby, required to keep his office open each day of the week prior to the time appointed for the schools to open in his county, and for one week immediately after, and for at least one day in each week during the remainder of the school term, for the convenience of those wishing to purchase books. * * * *Provided, however,* That nothing herein contained shall prevent the keeping of said depository in some other place than the office of the

Superintendent of Education, if in his judgment it is best to do so."

The contract of 1893 for school books referred to in this statute is now at an end, and when the new contract now under review was before the Board of Education for consideration, there was no power anywhere to require the publishers to furnish books in future to County Superintendents or other depositories at ten per cent. less than they now agree to furnish them through a State depository. Unquestionably it is still the duty of the Board of Education to use all reasonable means to secure the lowest possible prices consistent with the successful conduct of the schools; but as we have seen, there was some ground for the Board to reach the conclusion that by the use of a central depository the convenience of patrons might be greatly promoted, with such advantages and savings to the publishers as would enable them to pay the ten per cent. for maintaining it without increasing the price of the books in the hands of the pupil, or "the first cost," referred to in the act of 1905 (24 Stat., 877).

The plaintiffs earnestly maintain, however, that the defendants are impliedly forbidden by the statute law of the State to require the establishment of a central depository. Section 1175 of the Civil Code provides that the State Superintendent of Education "shall have general supervision over all the public school funds," and that "he shall secure by and with the advice of the State Board of Education uniformity in the use of text-books throughout the public schools of the State, and shall forbid the use of sectarian or partisan books or instruction in said schools." The general powers of the State Board of Education are thus laid down in section 1184 of the Civil Code: "The State Board of Education shall have power: 1st. To adopt rules and regulations not inconsistent with the laws of the State for its own government and for the government of the free public schools." The statute then confers in these words the specific power to provide for a uniform system of text-books: "To prescribe and to

enforce, as far as practicable, the use of a uniform series of text-books in the free public schools of the State." If the statute had stopped here, doubt would hardly be entertained that in carrying into effect the plan of using a uniform system of text-books, the State Board of Education, under the broad power to adopt regulations for the government of the public schools, would have the power to use such means as it thought wise to have the uniform series of books reach the children with the least possible expense and inconvenience, and that requiring the establishment of a central depository at the capital would be a regulation fairly adapted to that end. The petitioners maintain, however, that the power to require the establishment of a central depository is denied by necessary implication by the following clause of the statute: relating to the powers of the State Board of Education, "To require the publishers, in the discretion of the board, to establish in each county one or more depositories of their books within the State, at such place or places as the board may designate, and where such books may be obtained without delay." The argument is that the "one or more depositories" established in each county must be all of the same class and primarily serve for the distribution of books for the county where it is located. But there is no indication in the statute that the Board of Education may not require one of these depositories at a convenient location to be used as the wholesale warehouse from which the books may be distributed to the others, and the Court would be going far beyond its function to undertake to write into the statute such a limitation upon the broad powers conferred upon the Board of Education.

The fact that section 1239, which relates entirely to the County Board of Education and the County Superintendent, having charge of purely county affairs, provides that the places where the books are supplied locally shall be deemed depositories, does not signify that the State Board of Education, having the right to make regulations for the govern-

ment of the schools of the entire State, may not require an agency performing a larger function in the distribution and sale of books which would also be in its nature and functions a legal depository.

I think, therefore, the injunction should be refused on the ground that the Board of Education has not acted beyond the power conferred by the statute law of the State in requiring the establishment of the central depository by the publishers who are to furnish the text-books for the public schools of the State, and I should be content to rest my conclusion on this ground alone. But there are other reasons for refusing the injunction.

The injury which the petitioners allege they would suffer does not differ in kind from that which would be suffered by the people at large patronizing the public schools, and if there had been any cause of action, the suit should have been instituted by or on behalf of the State. *Manson* v. *R. R. Co.,* 64 S. C., 120, 41 S. E., 834.

But aside from that, the personal interest of the petitioners is exceedingly small, it being impossible that it could amount to more than five or six dollars each year. On the other hand, the plans devised by the State Board of Education for furnishing the books have been undertaken and carried almost to completion, and have presumably received full consideration with due solicitude for the public interest. The Court should, therefore, require the clearest showing not only of material injury to the petitioners but also that the Board of Education has transcended its statutory powers. So far from there being such a showing, it is clear to my mind, for the reasons already stated, that the board has not exceeded its powers.

The petitioners do not allege that they had no knowledge of the terms of the contract which they assail before the bids of the publishers were received, and as far as appears from the complaint, they have waited without excuse until the board has expended much time and labor; and their delay, if

the injunction should now be granted, would greatly disarrange the public business. The motion for a temporary injunction is refused and the temporary restraining order revoked.

The petitioners filed separate petitions, but the cases were substantially the same, and it was agreed by counsel that they should be disposed of as if only one case had been presented.